27605. DAVIS *v.* THE STATE.

Decided November 3, 1939. Rehearing denied December 14, 1939.

*J. T. Sisk,* for plaintiff in error.

*A. S. Skelton,* solicitor-general, contra.

MacIntyre, J. Grounds 1 and 2 of the amendment to the motion for new trial are elaborations of the general grounds and will be decided in a consideration of the general grounds. In view of the judge's note to ground 3 the ground is not meritorious. Furthermore, this ground of the amended motion is incomplete in that it does not have affidavits as to the names of the associates of the witness upon whose newly discovered evidence a new trial is sought, and the trial judge did not abuse his discretion by refusing to grant a new trial upon this ground where such affidavits do not comply with this requirement. *Ivy* v. *State,* 154 *Ga.* 63 (113 S. E. 175). This disposes of all the special grounds.

There was evidence to the effect that Louise Brawner, mother of the defendant's wife, Minnie Lee Brawner, saw the defendant and his wife in the yard of the witness at a wash bench. That they (defendant and his wife) had been there at least one half an hour, and were seen there alone together sitting on the bench about fifteen minutes before the wife was shot with a pistol. The mother further testified that when she heard the pistol shot, "I run down there as fast as I could, and I couldn't see anybody but her and the two children holloing in the yard, and I heard somebody running back in the corn patch behind the cow lot;" that she did not see the defendant do the shooting, nor did she see him after; that before the shooting the defendant and his wife "was out there arguing, but I don't know what sort of threats he was making; they was out there arguing, just like me and my husband do, and one of them seems to be like they was angry;" that immediately after she was shot "she holloed and said, 'Are you going to let him kill me?' She didn't call any names. Then we went running to her and she had fell up next to the edge of the yard. I didn't pay no attention to anybody being out there with Minnie Lee [the wife] and Roscoe Davis [the husband] and I didn't see anybody;" that the defendant never went to see his wife after she was shot.

It further appeared from the evidence that the officers made a search for the defendant at his home but didn't find him there, and finally located and caught him at Royston, which is about twenty miles from Elberton (the place where the crime was committed), about a month or six weeks after the shooting. In other words,

the defendant fled. Annie Randolph testified for the State: "I lives in what they call Red Hell, which is off South Oliver Street. Dr. Ben Mattox's is the first alley, and Red Hell is next, and the next is Sweet Heaven," the place where the mother of the woman who was shot lived and the place where the shooting occurred. Sweet Heaven was within "holloing distance" of the witness's (Annie Randolph's) home, and on the night Minnie Lee Brawner got shot she (the witness) was fixing to go to town and heard the shooting. "We heard somebody running through the yard," and the witness ran out to Oliver Street. The witness testified she heard a woman call the name "Roscoe." This woman testified that she heard a statement made: "Roscoe, right now you have done some devilment." The witness identified "Roscoe" as "this man over here," referring to the defendant. Another witness testified that Black Lightning (another negro community) is about forty yards from Red Hell. That "folks living in Black Lightning come out to Oliver Street by a footpath. There is roads or paths connecting Red Hell with Black Lightning and Sweet Heaven, and they are constantly being used by people coming and going day and night."

The evidence authorized the conviction of the defendant for assault with intent to murder his wife. Some one may inquire "Is it not passing strange that so heinous a crime should have been committed in 'Sweet Heaven' rather than in 'Red Hell' or 'Black Lightning'?" To them we would reply: "A crime committed in 'Sweet Heaven' is just as heinous as one committed in 'Red Hell' or 'Black Lightning.' What's in a name?"

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. The defendant, in his motion for rehearing, seems to think that the court construed the testimony of Annie Randolph as stating that she positively identified Roscoe Davis, the defendant, as being the man to whom she heard Melissa Oddister talk on the occasion in question when, in fact, the witness only testified that she heard Melissa call the name Roscoe "and [the witness] asked who it was;" and that she, the witness, never saw the man to whom the remarks were addressed by Melissa. It further seems that the movant claims that the testimony of the witness Randolph was in effect that while the man on trial was

named Roscoe Davis, yet the witness did not see him on the night the crime was committed at the time and place in question. In order to clarify the opinion as to the effect of this testimony of Annie Randolph, we have stricken from the original opinion the following language: "The witness identified 'Roscoe' as 'this man over here,' referring to the defendant," and substitute therefor the following language: The witness testified that the defendant on trial was Roscoe Davis, and that the man addressed on the occasion in question was some one whom Melissa called "Roscoe." The witness did not see the man thus addressed and could not identify him.

With this substitution in the original opinion we think the verdict is sustained by the circumstantial evidence and is not contrary to law. *Fraser* v. *State*, 55 *Ga.* 326 (6); *Folds* v. *State*, 41 *Ga. App.* 305 (152 S. E. 601).

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*